UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LISA A. STEIMAN,

                              Plaintiff,

                    v.                              Civ. Case No. 08-CV-11383 (SAS)

                                                   ECF CASE
WPP GROUP PLC and OGILVY & MATHER
WORLDWIDE, INC.

                              Defendants.


# MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS MOTION TO DISMISS


**DAVIS & GILBERT LLP**
 Howard J. Rubin: hrubin@dglaw.com
 Gregg L. Brochin: gbrochin@dglaw.com
 1740 Broadway
 New York, NY  10019
 (212) 468-4800
 *Counsel for Defendants WPP Group PLC*
 *and Ogilvy & Mather Worldwide, Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..........................................................................................1

PROCEDURAL HISTORY...............................................................................................2

LEGAL STANDARD........................................................................................................4

STATEMENT OF RELEVANT FACTS AND ALLEGATIONS ASSUMED TO BE
     TRUE.......................................................................................................................5

ARGUMENT....................................................................................................................8

I.     THIS COURT LACKS SUBJECT-MATTER JURISDICTION
     BECAUSE THE SECRETARY'S ORDER IS NOT SUBJECT TO
     JUDICIAL REVIEW ...............................................................................................8

II.     OGILVY CANNOT BE SUED  UNDER THE SOX WHISTLEBLOWER
     PROVISION  BECAUSE IT IS NOT A PUBLIC COMPANY AND NOT
     AN AGENT OF ONE ............................................................................................11

     A.     Ogilvy Is Not A Publicly-Traded Company .............................................11

     B.     Ogilvy Is Not An Agent Of A Publicly-Traded Company .......................13

     C.     Two DOL Administrative Law Judges,  In Addition To The
          Secretary Of Labor In This Case,  Have Already Held That A Non-
          Public WPP Subsidiary  Is Not Subject To Claims Under The SOX
          Whistleblower Provision...........................................................................15

III.     The Complaint Does Not Allege  Any Facts To Support Any Claim That
     WPP, As Opposed To Ogilvy, Took Any Retaliatory Action Against Her...........17

     A.     Steiman Fails To State A Direct Claim Against WPP...............................17

     B.     WPP Cannot Be Held Vicariously Liable For Ogilvy's Actions...............18

IV.     ALL CLAIMS BASED ON ALLEGED  RETALIATORY ACTIONS
     TAKEN PRIOR TO APRIL 2, 2008  ARE BARRED BY THE
     APPLICABLE STATUTE OF LIMITATIONS....................................................19

V.     CONCLUSION......................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Ambrose v. U.S. Foodservice,*
   Case No. 2005-SOX-105, 2006 WL 3246896 (DOLSOX) (ALJ Apr. 17, 2006) ...................14

*Am. Protein Corp. v. AB Volvo,*
   844 F.2d 56 (2d Cir. 1988).........................................................................................................18

*Brady v. Calyon Sec. (USA) Inc.,*
   406 F. Supp. 2d 307 (S.D.N.Y. 2005).........................................................................11, 12, 13

*Brass v. Am. Film Techs.,*
   987 F.2d 142 (2d Cir. 1993)...................................................................................................3, 4

*Burke v. WPP Group, plc,*
   No. 2007-SOX-00016, 2008 DOLSOX LEXIS 34 (ALJ May 8, 2008)............................16, 17

*Cecere v. R.J. Reynolds Tobacco Co.,*
   No. 98 Civ. 2011(RPP), 1998 WL 665334 (S.D.N.Y. Sept. 28, 1998) ......................................5

*De Jesus v. Sears, Roebuck & Co., Inc.,*
   87 F.3d 65 (2d Cir. 1996).......................................................................................................4, 14

*Del. State Coll. v. Ricks,*
   449 U.S. 250, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980)...........................................................19

*In re Amaranth Natural Gas Commodities Litig.,*
   587 F. Supp. 2d 513 (S.D.N.Y. Oct. 4, 2008).............................................................................5

*Kalkunte v. DVI Fin. Servs., Inc.,*
   No. 2004-SOX-56, 2005 WL 4889006 (DOLSOX) (ALJ July 18, 2005)................................13

*Klopfenstein v. PCC Flow Techs. Holdings, Inc.,*
   DOL ARB, Case No. 04-149, 2006 WL 3246904 (DOLSOX) (May 31, 2006).....................13

*Klopfenstein v. PCC Flow Techs. Holdings, Inc.,*
   Case No. 2004-SOX-11, 2006 DOLSOX LEXIS 113 (ALJ Oct. 13, 2006) ...........................13

*Koeck v. Gen. Elec. Consumer & Indus.,*
   DOL ARB Case N0. 08-068, 2008 WL 4124120 (DOL Ad. Rev. Bd.)(Aug. 28,2008) ...........9

*LaBounty v. Adler,*
   933 F.2d 121 (2d Cir. 1991).......................................................................................................4

*Leeds v Meltz,*
   85 F.3d 51 (2d Cir. 1996)........................................................................................................4, 5

*Lowe v. Terminix Int'l Co., LP,*
  Case No. 2006-SOX-89 2006 DOLSOX LEXIS 101 (ALJ Sept. 15, 2006) ...........................12

*Makarova v. United States,*
  201 F.3d 110 (2d Cir. N.Y. 2000) ...............................................................................................3

*Martin v. R.M. Black, Jr. Produce, Inc.,*
  1992 U.S. Dist. Lexis 4955 (S.D. Ala. Apr. 8, 1992) .........................................................10, 11

*McClendon v. Hewlett-Packard Co.,*
  No. CV-05-087-5-BLW, 2005 WL 1421395 (D. Idaho June 9, 2005)...................................19

*McGrath v. Mukasey,*
  07 Civ. 11058 (SAS), 2008 WL 1781243 (S.D.N.Y. Apr. 18, 2008)..................................*4, 10*

*Pampillonia v. RJR Nabisco. Inc.,*
  138 F.3d 459 (2d Cir. 1998)...............................................................................................17, 18

*Savastano v. WPP Group, Plc,*
  No. 2007-SOX-00034, 2007 DOLSOX LEXIS 54 (ALJ July 18, 2007) ................................17

*United States v. BestFoods, Inc.,*
  524 U.S. 51 (1998)..................................................................................................................18

## STATUTES, RULES AND REGULATIONS

29 C.F.R. § 1980.114.....................................................................................................................9

15 U.S.C. § 78m...........................................................................................................................12

15 U.S.C. § 7241...........................................................................................................................12

18 U.S.C. § 1514A(b)(1)(B) .........................................................................................................10

18 U.S.C. § 1514A(b)(2)(A) .....................................................................................................8, 19

49 U.S.C. § 2305...........................................................................................................................10

49 U.S.C. § 31105.........................................................................................................................10

49 U.S.C. § 42121(b) .....................................................................................................................8

49 U.S.C. § 42121(b)(1) .................................................................................................................8

49 U.S.C. § 42121(b)(2) .................................................................................................................9

Fed. R. Civ. P. 12(b)(1) & (6)........................................................................................................1

Sarbanes-Oxley Act, 18 U.S.C. § 1514A (the "SOX Whistleblower Provision")................. *passim*

Rule 12(b)(1)................................................................................................................................3, 4

Rule 12(b)(6)......................................................................................................................3, 4, 5, 14

Surface Transportation Assistance Act of 1982 (the "STAA")................................................10, 11

§ 12 of the Securities and Exchange Act of 1934 (the "SEC Act")........................................11, 16

§ 15(d) of the Securities Exchange Act of 1934 .....................................................................11, 16

Defendants WPP Group plc ("WPP")[1] and Ogilvy & Mather Worldwide, Inc. ("Ogilvy"), by their undersigned counsel, respectfully submit this Memorandum of Law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(1) & (6), to dismiss the Complaint  filed by plaintiff Lisa A. Steiman ("Steiman") in its entirety.

## PRELIMINARY STATEMENT

The Complaint should be dismissed in its entirety because this Court lacks jurisdiction over Steiman's sole claim, which was brought pursuant to the whistleblower provision of the Sarbanes-Oxley Act.   After the Secretary of Labor issued a preliminary order dismissing Steiman's administrative complaint because the Department of Labor lacked jurisdiction, Steiman failed to request a hearing as required by the applicable statute, and the order became final. The plain language of that statute provides, "If a hearing is not requested in such 30-day period [following the preliminary order], the preliminary order shall be deemed a final order that is not subject to judicial review." Therefore, the Secretary of Labor's preliminary order became final and unappealable, and this Court lacks jurisdiction over Steiman's claim.

In addition, the Complaint should be dismissed against Ogilvy because, by the plain language of the Sarbanes-Oxley Act whistleblower section, that provision only applies to publicly-traded companies or an agent of such company. The Complaint does not – and cannot – allege that Ogilvy is a publicly-traded company, because it is not.  Furthermore, other than a conclusory statement – which need not be accepted as true – the Complaint is devoid of any facts

---

[1]   For clarification, WPP Group plc has been renamed WPP 2008 Limited, and a new public company, named WPP plc, was created.  WPP plc is a public limited company incorporated under the Companies (Jersey) Law 1991 (as amended) and it has its primary listing on the London Stock Exchange, while its American Depository Shares are traded on NASDAQ.

to establish that Ogilvy acted as an agent of its indirect parent company, WPP. Indeed, the fact that Ogilvy was not the agent of WPP is the very reason that the Secretary of Labor dismissed Steiman's administrative complaint against Ogilvy.

Moreover, the Complaint against WPP should also be dismissed because Steiman does not – and cannot – allege that WPP, or any WPP employee, took any action – adverse or otherwise – against her at all, much less in retaliation for protected activity. Steiman was employed by Ogilvy, and the alleged retaliatory actions in the Company were taken by Ogilvy and Ogilvy employees. The Complaint is devoid of any factual allegations of any actions against her by WPP, any WPP employees or officers, or anyone acting under the direction or control of WPP. And the Complaint lacks sufficient allegations to infer that WPP could even be vicariously liable for the actions of Ogilvy. The Secretary of Labor dismissed Steiman's administrative complaint against WPP for these very reasons. Moreover, if Steiman is allowed to proceed against the indirect parent company of the subsidiary for which she actually worked, plaintiffs could sue every parent, subsidiary and affiliate of a publicly-traded company under the Sarbanes-Oxley whistleblower provision, regardless of who was the alleged wrongdoer and regardless of who was actually involved in the allegedly retaliatory actions. Clearly, this is an incorrect reading of the statute, and therefore the Complaint fails to state a claim against WPP, either directly or derivatively.

## PROCEDURAL HISTORY

On July 1, 2008, Steiman, through her counsel, submitted a complaint to the Occupational Safety and Health Administration, a part of the United States Department of Labor (the "DOL"), alleging retaliation in violation of the whistleblower provision of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A (the "SOX Whistleblower Provision"). *See* Ex. 1 to Affirmation

of Gregg L. Brochin dated February 27, 2009 ("Brochin Aff.").[2]  On August 4, 2008, WPP and

Ogilvy submitted a position statement in response to the administrative complaint, which

explained that the DOL lacked jurisdiction over the claim because Ogilvy, the employer, was not

a publicly-traded company, as required by the SOX Whistleblower Provision. *See* Brochin Aff.

Ex. 2.  On September 18, 2008, the DOL investigator, acting on the authority of the Secretary of

Labor, dismissed Steiman's complaint, in a reasoned opinion, because Ogilvy is not a covered

company under the SOX Whistleblower Provision and WPP neither employed Steiman nor made

the decision to hire or fire her (the "DOL's Findings and Order"). *See* Brochin Aff. Ex. 3.

On October 17, 2008, Steiman's counsel sent a letter to the DOL's Office of

Administrative Law Judges "to file Complainant's objections to the Secretary's Findings and

Order." *See* Brochin Aff. Ex. 4.  This letter (the "Objections Letter") listed 3 specific objections

to the DOL's Findings and Order, but pointedly, and intentionally, did not request a hearing. *Id.*

Rather, Steiman's counsel used the Objections Letter to provide notice of Steiman's intent to

bring an action in federal court after the 180th day after she filed her administrative complaint –

which is the first day that she could file such an action under the SOX Whistleblower Provision –

---

[2]  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court … may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. N.Y. 2000).  In addition, the Complaint alleges that Steiman has exhausted the administrative remedies available to her in that she filed a complaint with the DOL and the Secretary of Labor had not issued a final decision within 180 days of the filing of such complaint.  Comp. ¶ 23.  The Second Circuit has held that certain matters, while "technically outsides the pleadings," may properly be considered when deciding a Rule 12(b)(6) motion, including: documents incorporated by reference into the complaint; matters of which judicial notice may be taken; and documents either in the plaintiff's possession or of which the plaintiff had knowledge and relied in bringing suit. *See Brass v. Am. Film Techs.*, 987 F.2d 142, 150 (2d Cir. 1993).  In this case, the documents relating to the administrative complaint may be properly considered by the Court in support of Defendants' dismissal motion because Steiman referenced them, has knowledge of these documents, and has possession of these documents.

and which action would end the administrative process without a hearing. *Id.* The Objections Letter in no way requested a hearing before an Administrative Law Judge. *Id.*

On December 31, 2008, Steiman filed the Complaint in this Court.

## LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *McGrath v. Mukasey*, 07 Civ. 11058 (SAS), 2008 WL 1781243, at *3 (S.D.N.Y. Apr. 18, 2008) (internal quotations and citation omitted). "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Id.* (internal quotations and citation omitted). "In resolving a motion to dismiss under Rule 12(b)(1), a court may consider evidence outside the pleadings, including affidavits submitted by the parties, and is not limited to the face of the complaint." *Id.* (internal quotations and citation omitted). "To defeat a motion to dismiss under Rule 12(b)(1), the plaintiff must prove the existence of subject matter jurisdiction by a preponderance of the evidence." *Id.* (internal quotations and citation omitted).

On a motion to dismiss based on Rule 12(b)(6), "all factual allegations in the complaint must be taken as true and construed favorably to the plaintiff." *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991). However, "[w]hile the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." *Leeds v Meltz*, 85 F.3d 51, 53 (2d Cir. 1996); *see also De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996) (finding that "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of *Rule 12(b)(6)*"). Moreover, "[a]lthough the complaint need not provide detailed factual allegations, it must amplify a claim with some factual allegations to render the claim

4

plausible." *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 528 (S.D.N.Y. 2008) (internal quotations and citations omitted). Plaintiff bears the burden to raise specific factual allegations and cannot rely on mere conclusory statements. *See Cecere v. R.J. Reynolds Tobacco Co.*, No. 98 Civ. 2011(RPP), 1998 WL 665334 (S.D.N.Y. Sept. 28, 1998).

### STATEMENT OF RELEVANT FACTS
### AND ALLEGATIONS ASSUMED TO BE TRUE

Steiman began her employment with the Defendants in April 1996. Compl. ¶ 25.[3] In her position as Senior Partner, Executive Producer, Steiman's primary role was to create broadcast advertising for use on television and occasionally internet mediums that fulfilled the creative vision of Ogilvy's advertising. *Id.* at ¶ 26. Steiman does not allege that she performed any work for WPP's clients, and does not even allege that WPP has any clients.[4]

Throughout her employment, Ms. Steiman reported to Lynn Roer ("Roer"), the Director of the Broadcast Department. *Id.* at ¶ 27. Steiman does not allege of whose Broadcast

---

[3]  With no justification, Steiman conflates two wholly-separate companies, Ogilvy and WPP. Ogilvy is an indirect subsidiary of WPP plc - there are many companies between Ogilvy and WPP plc within the corporate structure. Indeed, in an attempt to make the two separate companies seem like one entity, she alleges in the Complaint that Ogilvy's principal executive office is located at 125 Park Avenue, New York, New York, which she alleges to be the same address as WPP. But in her administrative complaint she truthfully stated that Ogilvy's principal New York office is located at 309 West 49th Street, New York, New York, where Steiman worked. The facts will show that WPP plc does not have any employees or offices in the United States at all, while WPP Group USA, Inc., itself an indirect subsidiary of WPP plc, has an office at 125 Park Avenue, NY, NY. The facts will also show that Ogilvy's offices, where Steiman worked, are located at Worldwide Plaza, 309 West 49th Street.

[4]  WPP is, in fact, a holding company that does not have any clients.

Department Roer was the director.[5]   Steiman also does not allege who employed Roer.[6]   And Steiman does not allege that she worked for or reported to anyone at WPP – because she cannot.

On August 13, 2007, Roer requested that Steiman negotiate a cost reduction from a musical composer on a commercial.  *Id.* at ¶ 40.  Steiman did so, and she arranged for the composer to accept a $10,000 payment for his work, rather than the $25,000 payment originally negotiated and budgeted for his services.  *Id.*  Roer then directed Steiman to charge this expense through an affiliate of Defendants and bill the client for the full $25,000.  *Id.* at ¶ 41.  Steiman alleges that she was "[c]oncerned that Ms. Roer's instructions would amount to fraudulent billing" and pointed that out to Roer.  *Id.* at ¶ 42.  Roer allegedly still encouraged Steiman to "do it."  *Id.*  After that meeting, Steiman continued to have doubts about the propriety of billing the client $25,000 and "misrepresenting" that the full charge was for the music composer, when his services would only cost Ogilvy $10,000.  *Id.* at ¶ 43.

On or about August 16, 2007, Steiman told Roer that she was "not comfortable" with billing the client $25,000 and "misrepresenting" that the charge was for the music composer, when his services only cost $10,000, especially given Defendants' prior history of fraudulent billing.  *Id.* at ¶ 44.  Roer replied, "Well, it's not like we were doing anything wrong:  I was just putting a mark-up on it."  *Id.*  Steiman does not explain how charging a client a mark-up or charging a client the "negotiated and budgeted" price for a service is fraudulent.  Steiman also does not – and cannot – allege that a $25,000 bill was actually sent to the client for music composer services, nor does she allege that any fraudulent or even incorrect invoice was sent to the client at all.  Notably, Steiman's entire basis for her Sarbanes-Oxley retaliation claim is based

---

[5]   It is Ogilvy's Broadcast Department, not WPP's.

[6]   It is Ogilvy only, not WPP.

6

on the allegation that several months prior to the termination of her employment, she complained about an alleged potential $15,000 discrepancy on one client invoice that was never created or sent, which would have resulted in the budgeted amount being charged to the client.

After this incident, Steiman alleges that "Ms. Roer and Defendants" began to retaliate against her by marginalizing her, removing her from accounts, not allowing her to work on accounts, disparaging her within the company, giving her an inaccurate poor performance review, and ultimately terminating her employment. *Id.* at ¶ 45. Steiman specifically alleges that Roer took virtually all of the actions against her. *Id.* at ¶¶ 46, 47, 48, 49, 50, 51 and 57. The only other specific person alleged to have taken an action against Steiman was Carlene Zanne "of Human Resources" and possibly Joe Panetta "of the Ethics Department." *Id.* at ¶¶ 53, 58. Steiman does not allege which company employed Zanne or for whom she performs human resources services.[7]   And Steiman does not allege which company employed Panetta or for whom he had "Ethics Department" responsibilities.[8]

On January 15, 2008, Zanne informed Steiman that she was to take a paid leave of absence, and on April 2, 2008, Zanne informed Steiman "that it was terminating her employment." *Id.* at ¶¶ 58, 59. Steiman does not allege to whom the "it" refers.[9]   However, Steiman does not make any specific allegations about any WPP employees, does not allege that anyone told her that she was being fired from WPP, and does allege that WPP influenced, ordered, controlled or even knew about any action taken by Roer, Zanne, Panetta or Ogilvy against her.

---

[7] It is Ogilvy only, not WPP.

[8] It is Ogilvy only, not WPP.

[9] Presumably, she means Ogilvy, as that is the company for which Stieman worked and is the company that terminated Steiman's employment.

## ARGUMENT

### I.    THIS COURT LACKS SUBJECT-MATTER JURISDICTION BECAUSE THE SECRETARY'S ORDER IS NOT SUBJECT TO JUDICIAL REVIEW

The procedural requirements for a SOX Whistleblower Provision claim are set forth in the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century. *See* 18 U.S.C. § 1514A(b)(2)(A) (providing that SOX whistleblower actions are governed under the rules and procedures of 49 U.S.C. § 42121(b)). As such, a plaintiff must first file a complaint with the Secretary of Labor. 49 U.S.C. § 42121(b)(1). The Secretary of Labor will then conduct an investigation and provide the parties with findings and a preliminary order. *Id.* at § 42121(b)(2). The statute then requires:

> Not later than 30 days after the date of notification of findings under this paragraph, either the person alleged to have committed the violation or the complainant may file objections to the findings or preliminary order, or both, and request a hearing on the record. The filing of such objections shall not operate to stay any reinstatement remedy contained in the preliminary order. Such hearings shall be conducted expeditiously. *If a hearing is not requested in such 30-day period, the preliminary order shall be deemed a final order that is not subject to judicial review.*

*Id.* (emphasis added).

After conducting its investigation, the Secretary of Labor provided the parties here with the DOL's Findings and Order, which held that Steiman was employed and discharged by Ogilvy, that a preponderance of the evidence indicates that Ogilvy did not act as an agent of WPP in terminating Steiman, that WPP neither employed Steiman nor made the decision to hire or fire her, and that for such reasons, Steiman was not an employee covered under the SOX

Whistleblower Provision.[10]  *See* Brochin Aff. Ex. 3.  The Secretary issued an Order stating, "The complaint is dismissed."  *Id.*

On October 17, 2008, Steiman sent the Objections Letter to the DOL.  *See* Brochin Aff. Ex. 4.  In that letter, Steiman wrote "to file Complainant's objections to the Secretary's Findings and Order."  *Id.*  Steiman reiterated the basic nature of her claim and stated, in conclusory fashion, that Ogilvy and WPP retaliated against her in violation of the SOX Whistleblower Provision.  *Id.*  The Objections Letter followed this with three specific objections to the DOL's Findings and Order.  *Id.*  The Objections Letter concluded with the following: "In accordance with 29 C.F.R. § 1980.114, the Complainant hereby provides notice of her intent to bring an action in federal district court after the 180th day of filing her Complaint with OSHA on July 1, 2008."  *Id.*

Critically, the Objections Letter did not request a hearing, and such failure was clearly intentional.  *Id.*  Indeed, the Objections Letter clearly stated Steiman's intention to file an action in federal court at the earliest possible date, which would deprive the DOL of any further jurisdiction,[11] and from that, it is clear that Steiman did not want an administrative hearing.  The statutory procedural requirements clearly state that "the complainant may file objections to the findings or preliminary order, or both, and request a hearing on the record … If a hearing is not requested in such 30-day period, the preliminary order shall be deemed a final order that is not subject to judicial review."  49 U.S.C. § 42121(b)(2).  By the plain language of the operative

---

[10]  The SOX Whistleblower Provision only applies to publicly-traded companies and their employees, contractors and agents.  *See* Argument II below.  Only WPP, and not Ogilvy, is alleged to be a publicly-traded company.  *See* Compl. ¶¶ 3 & 6.

[11]  *See Koeck v. Gen. Elec. Consumer & Indus.*, DOL ARB Case N0. 08-068, 2008 WL 4124120 (DOL Ad. Rev. Bd.) at *3 (Aug. 28, 2008) (dismissing complainant's SOX appeal because complainant exercised her right to remove her SOX case to federal court).

statute, when Steiman intentionally failed to request a hearing after receiving the DOL's Findings and Order, such order became final and unappealable to this Court.

Moreover, pursuant to the SOX Whistleblower Provision, an individual only may bring a retaliation claim in federal court "if the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant...." 18 U.S.C. § 1514A(b)(1)(B). Because the Secretary's order became final pursuant to the plain language of the SOX Whistleblower Provision, and such final order is not subject to review by this court, Steiman is not entitled to bring an action in this Court for review. Therefore, this Court should dismiss the Complaint for lack of jurisdiction. *See, e.g., McGrath v. Mukasey*, 07 Civ. 11058 (SAS), 2008 WL 1781243 (S.D.N.Y. Apr. 18, 2008) (holding that this Court lacked jurisdiction over a claim where the statute at issue did not provide a right of review).

Although we are unable to find any cases specifically addressing this procedural requirement under the SOX Whistleblower Provision, at least one U.S. District Court has dismissed a plaintiff's claim under a statute with a virtually identical procedural requirement, where the plaintiff failed to timely request a hearing. In *Martin v. R.M. Black, Jr. Produce, Inc.*, 1992 U.S. Dist. Lexis 4955, (S.D. Ala. Apr. 8, 1992), the court decided a claim brought under the Surface Transportation Assistance Act of 1982 (the "STAA").[12] Under the STAA, just as under the SOX Whistleblower Provision, an employee must first file a complaint with the Secretary of Labor, who must then investigate and issue a preliminary order. *Id.* at *5. And just as under the SOX Whistleblower Provision, an STAA complainant then has the right to file

---

[12]  The case cites to 49 U.S.C. § 2305, but such section has been since recodified at 49 U.S.C. § 31105. The procedural requirements with regard to requesting a hearing remain the same.

10

objections and request a hearing, and "where a hearing is not timely requested, the preliminary order shall be deemed a final order which is not subject to judicial review." *Id.* at *6 Based on these procedures, the *Martin* court held, "Because a hearing was not timely requested, the Secretary's Order is not subject to judicial review." *Id.* The court added, "As the defendant did not timely object to and request a hearing on the Secretary's preliminary order ... [13] this Court may not properly review the substance of the" preliminary order. Likewise, here, this Court may not review the order dismissing Steiman's complaint because a hearing was not timely requested. Such order is final and unappealable, and therefore this Court lacks subject-matter jurisdiction over the sole claim in the Complaint.

## II. OGILVY CANNOT BE SUED UNDER THE SOX WHISTLEBLOWER PROVISION BECAUSE IT IS NOT A PUBLIC COMPANY AND NOT AN AGENT OF ONE

### A. Ogilvy Is Not A Publicly-Traded Company

The operative section of the SOX Whistleblower Provision is specifically captioned: "WHISTLEBLOWER PROTECTION FOR EMPLOYEES OF PUBLICLY TRADED COMPANIES." 18 U.S.C.A. § 1514A (emphasis added). Specifically, the SOX Whistleblower Provision protects employees of companies that have a class of securities under Section 12 of the Securities and Exchange Act of 1934 (the "SEC Act") or that are required to file reports under Section 15(d) of the SEC Act. *Id.* A Southern District of New York Court has held, in light of this language, "A specific requirement [of the SOX Whistleblower Provision], therefore, is that defendant be a publicly traded company." *Brady v. Calyon Sec. (USA) Inc., 406 F. Supp. 2d*

---

[13] Unlike under the SOX Whistleblower Provision, the STAA, according to the *Martin* court, permits an appeal of the Secretary's final order to the Court of Appeals, which the plaintiff did not do in the *Martin* case.

*307, 317 (S.D.N.Y. 2005)*.  Ogilvy is not – and is not alleged to be – such a publicly-traded company, and therefore it should be dismissed from this action.

Indeed, the SOX Whistleblower Provision does not refer to non-public subsidiaries of public companies, and "a reference to subsidiaries in another section of the [Sarbanes-Oxley Act], when combined with the absence of the term in the whistleblower section, is more likely evidence of an intent to not include subsidiaries in the whistleblower section, than an indication that Congress assumed that the uncommonly broad interpretation would be given to the word 'company.'"  *Lowe v. Terminix Int'l Co., LP*, Case No. 2006-SOX-89, 2006 DOLSOX LEXIS 101, at \*17 (ALJ Sept. 15, 2006).  In contrast to the SOX Whistleblower Provision, other sections of the Sarbanes-Oxley Act explicitly cover non-public subsidiaries of public companies. For example, Section 302 requires chief executive officers and chief financial officers of public companies to certify that their respective public company's internal controls ensure that material information relating to the public company's consolidated subsidiaries is made known to such officers during the relevant reporting period.  *See* 15 U.S.C. § 7241.  Similarly, Section 402 prohibits public companies from making loans to their directors and executive officers " . . . directly or indirectly, including through any subsidiary . . . ." 15 U.S.C. § 78m.  Therefore, the absence of a reference to "subsidiaries" proves that Ogilvy, a subsidiary of a public company, is not covered by the SOX Whistleblower Provision.

Steiman clearly understands that she cannot bring an action directly against Ogilvy, her actual employer.  That is why she tries – but fails – to conflate WPP and Ogilvy, two separate companies, and that is why she names WPP as a defendant, even though she neither worked for, nor had any meaningful contact with, WPP while employed by Ogilvy.  That is also why – after the arguments made by the Defendants to the DOL and the DOL's decision – she changed the

12

statements in her administrative complaint to the more misleading and ambiguous allegations in the Complaint, such as stating in the administrative complaint that "Ms. Roer and Ogilvy" allegedly retaliated against her, while in the Complaint alleging that "Ms. Roer and Defendants" allegedly retaliated against her. *See* Affirmation Ex. 1; Compl. ¶ 45.

### B.   Ogilvy Is Not An Agent Of A Publicly-Traded Company

Although the SOX Whistleblower Provision provides, "No [public company], or any officer, employee, contractor, subcontractor, or agent of such company, may" retaliate against an employee, 18 U.S.C. § 1514A, such language does not save Steiman's claim. "A non-publicly traded company can be deemed to be the agent of a publicly traded company if the publicly traded company directs and controls the employment decisions." *Brady*, 406 F. Supp. 2d at 318 n6. Moreover, the DOL decisions addressing the issue of agency have held that not only does the publicly-traded parent company need to direct and control the subsidiary's employment decisions, it needs to do so with respect to the individual plaintiff. *See, e.g.*, *Kalkunte v. DVI Fin. Servs., Inc.*, No. 2004-SOX-56, 2005 WL 4889006 (DOLSOX) (ALJ July 18, 2005) (holding that a non-public company was acting as an agent of a public company when the non-public company's principal also acted as the public company's CEO and was himself the person who made the decision to terminate the plaintiff) (cited with approval by *Brady*, 406 F. Supp. 2d at 317); *Klopfenstein v. PCC Flow Techs. Holdings, Inc.*, DOL ARB, Case No. 04-149, 2006 WL 3246904 (DOLSOX), at **9-10 (May 31, 2006) (holding that a non-public subsidiary could be subject to the Act's whistleblower provisions only if it is an "agent" of its publicly-held parent with respect to the challenged employment decision); *Klopfenstein v. PCC Flow Techs. Holdings, Inc.*, 2004-SOX-11, 2006 DOLSOX LEXIS 113, at **9-11 (ALJ Oct. 13, 2006) (holding, on remand, that a non-public company acted as an agent of its public subsidiary when the termination decision was made by an individual who was an officer of both the subsidiary

13

and parent, and no individual who held a position only with the subsidiary participated in the termination decision). Steiman has not – and cannot – allege any facts sufficient to meet this standard.

Steiman's conclusory statements alleging that Ogilvy is "intertwined" with WPP and that it is a "contractor, subcontractor or agent" of WPP (Compl. ¶¶ 8 & 63) should not be given any credence. *See De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996) (finding that "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of *Rule 12(b)(6)*"). Moreover, Steiman's attempt to create an agency relationship by allegations such as "Ogilvy and WPP share key executives," "WPP and Ogilvy share the same address in New York,"[14] and certain individuals outside of the United States either once worked for one company and then the other, or are employed by one company and on the board of the other (Compl. ¶¶ 9-21) is insufficient. *See, e.g., Ambrose v. U.S. Foodservice*, Case No. 2005-SOX-105, 2006 WL 3246896 (DOLSOX), at *10 (ALJ Apr. 17, 2006) (granting respondents' motion for summary decision because although indicia of interrelatedness between public parent and private subsidiary existed, public parent had at best a non-active, informal role in the specifics of complainant's employment and exerted no control or influence over the terms, conditions and termination of his employment). The Complaint here is lacking in one glaring respect: Steiman has not – and cannot – allege that any individual with any relationship to WPP had any involvement in Ogilvy's decision to terminate her employment or to retaliate against her in any way.

---

[14] As discussed above in footnote 3, Steiman has changed her position on the respective locations of WPP's and Ogilvy's offices.

The only specific people alleged to have retaliated against Steiman are Lynn Roer, her supervisor, and possibly Carlene Zanne ("of Human Resources") and Joe Panetta ("of the Ethics Department"). (Compl. ¶¶ 39, 45-59).[15] The Complaint lacks any allegation that any of these individuals were employed, controlled, or even influenced by WPP – because they were not. And the Complaint lacks any factual allegations indicating that WPP directed or controlled Ogilvy's decision to terminate Steiman's employment. Therefore, Steiman has not sufficiently alleged that Ogilvy acted as an agent of a public company in terminating her employment.

### C. Two DOL Administrative Law Judges, In Addition To The Secretary Of Labor In This Case, Have Already Held That A Non-Public WPP Subsidiary Is Not Subject To Claims Under The SOX Whistleblower Provision

The Secretary of Labor held, in the DOL's Findings and Order, that "Ogilvy & Mather Worldwide Inc. ("O&M") is not itself a company within the meaning of [the SOX Whistleblower Provision] in that it is neither a company with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 ... nor is it required to file reports under Section 15(d) of the Securities Exchange Act of 1934 ...." Brochin Aff. Ex. 3. The DOL'S Findings and Order added, "WPP and O&M do not constitute an integrated employer" and "[t]herefore, O&M is not a company covered under SOX." *Id.* As such, the DOL, just as this Court, lacked jurisdiction over the claim.

---

[15] In the administrative complaint, Steiman alleges that "Ms. Roer and Ogilvy began to retaliate against her...." In the Complaint, however, Steiman has changed her tune and now, without detail, alleges that "Roer and Defendants began to retaliate against Ms. Steiman ...." Compl. ¶ 42.

Moreover, the Secretary of Labor held, "[A] preponderance of the evidence indicates that [Ogilvy] did not act as an agent of WPP in terminating [Steiman]." Brochin Aff. Ex. 3. In addition to this conclusive pronouncement, two different DOL administrative law judges, after full hearings on the record, have also recently dismissed SOX Whistleblower Provision complaints brought by employees of non-public WPP subsidiaries, including Ogilvy, for lack of jurisdiction because the non-public subsidiaries are not agents of WPP with respect to the challenged adverse employment actions. On May 8, 2008, Administrative Law Judge Adele H. Odegard dismissed a complaint brought by Joseph Burke ("Burke"), a former Ogilvy employee, against Ogilvy and WPP and two individuals, alleging that his termination violated the SOX Whistleblower Provision. *Burke v. WPP Group, plc,* Case No. 2007-SOX-00016, 2008 DOLSOX LEXIS 34 (ALJ May 8, 2008). Judge Odegard held that she lacked jurisdiction over Burke's complaint because he was an employee of Ogilvy, not WPP, and there was no evidence that Ogilvy was acting as WPP's agent when it terminated him. *Id.* at \*78. Similarly, on July 18, 2007, Administrative Law Judge Daniel F. Sutton dismissed a SOX Whistleblower Provision complaint brought by Annette Savastano ("Savastano") against, among other entities, WPP and her former employer, Cannondale Associates ("Cannondale"), which, like Ogilvy, is a non-public subsidiary of WPP. *See Savastano v. WPP Group, Plc,* Case No. 2007-SOX-00034, 2007 DOLSOX LEXIS 54 (ALJ July 18, 2007). Judge Sutton held that there was no basis to support a finding that Cannondale acted as an agent of WPP in connection with the termination of Savastano's employment by Cannondale. *Id.* at \*\*18-19.

Because two separate Administrative Law Judges have held that WPP subsidiaries, including Ogilvy, do not act as agents of WPP in making employment decisions, because the Secretary of Labor in this case reached the same conclusion, and because the Complaint is

16

wholly devoid of any factual allegations indicating that WPP was in any way involved in Steiman's termination, the SOX Whistleblower Provision claim against Ogilvy should be dismissed.

### III.   THE COMPLAINT DOES NOT ALLEGE ANY FACTS TO SUPPORT ANY CLAIM THAT WPP, AS OPPOSED TO OGILVY, TOOK ANY RETALIATORY ACTION AGAINST HER

#### A.   Steiman Fails To State A Direct Claim Against WPP

As fully explained above, Steiman has not – and cannot – allege that defendant WPP took any adverse action against her at all, let alone for a retaliatory reason. The Complaint is wholly devoid of any factual statements alleging any actions against Steiman that were taken by any WPP employee or anyone acting at the request of, or on behalf, of WPP. And Steiman fails to allege any facts showing that she was an employee of WPP or that WPP controlled her working conditions. Moreover, in her administrative complaint she clearly alleges that she was employed by Ogilvy and that Ogilvy explained to her the reasons that it (not WPP) was terminating her employment. Brochin Aff. Ex. 1. And the Secretary of Labor determined that WPP "neither employed [Steiman] nor made the decision to hire or fire [her]." Brochin Aff. Ex. 3. Under these circumstances, and because it does not contain any non-conclusory allegations that WPP took any retaliatory action against her, the claim against WPP should be dismissed. *See Pampillonia v. RJR Nabisco. Inc.*, 138 F.3d 459, 461 (2d Cir. 1998) (dismissing a retaliation claim against a parent company where the complaint failed to allege facts sufficient to show that the parent company exercised control over plaintiff's working conditions or the subsidiaries' employment policies and practices).

Indeed, in *Pampillonia*, the U.S. Court of Appeals for the Second Circuit dismissed a direct retaliation claim against a parent company where the plaintiff (i) had participated in a retirement plan offered by a parent company to employees of its subsidiaries, (ii) was offered the

17

opportunity to participate in an employee stock ownership program offered by the parent company, (iii) was entitled to take advantage of corporate-wide education initiatives offered by the parent company, and (iv) received correspondence from the parent company informing the subsidiary's employees of the parent company's corporate goals. *Id*. at 461. The facts alleged by Steiman are similar (Compl. ¶¶ 9-21), and similarly insufficient. Therefore, WPP cannot be directly liable for the actions taken by Ogilvy and Ogilvy's employees.

### B.    WPP Cannot Be Held Vicariously Liable For Ogilvy's Actions

In certain limited circumstances, a parent company may be held liable for the actions of its subsidiary. To state such a claim, a plaintiff must allege facts that could establish a basis for piercing the corporate veil between the parent and subsidiary. *Pampillonia*, 138 F.3d at 461 (granting motion to dismiss a parent company); *see also United States v. BestFoods, Inc.*, 524 U.S. 51, 55 (1998) (dismissing Federal statutory claim against a parent company when the subsidiary was the alleged wrongdoer). Steiman's Complaint does not – and cannot – allege such facts.

To pierce the corporate veil, "[t]he parent must exercise complete domination 'in respect to the transaction attacked' so that the subsidiary had 'at the time' no separate will of its own, and such domination must have been used to 'commit fraud or wrong' against plaintiff, which proximately caused plaintiff's injury. *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988) (internal citations omitted). "Control is the key." *Id.* "Factors indicating that a parent corporation controls its subsidiary include lack of normal corporate formality in the subsidiary's existence, under-capitalization, and personal use of the subsidiary's funds by the parent or owner." *Id.* None of these factors are alleged – or present – in the Complaint. Moreover, even if the Complaint can somehow be read to sufficiently allege that WPP exercised "complete domination" over Ogilvy, it still does not allege that such domination was "in respect to"

18

Steiman's termination. Moreover, there is no basis to conclude (or even infer), based on the allegations in the Complaint, that WPP used Ogilvy to "commit fraud or wrong" against Steiman – even if WPP supplied certain policies to Ogilvy, provided stock options to Ogilvy employees, and had certain employees that were also employed by Ogilvy, there is no allegation – and no basis to allege – that such facts had anything to do with Steiman's termination or in any way were the proximate cause of her alleged injury. Therefore, the Complaint lacks facts sufficient to pierce the corporate veil, and the claim against WPP should be dismissed.

## IV. ALL CLAIMS BASED ON ALLEGED RETALIATORY ACTIONS TAKEN PRIOR TO APRIL 2, 2008 ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

The SOX Whistleblower Provision states that a whistleblower action "shall be commenced not later than 90 days after the date on which the violation occurs." 18 U.S.C. § 1514A(b)(2)(A). Moreover, "The Sarbanes-Oxley 90-day filing period begins to run when the employer makes and reasonably communicates the discriminatory adverse employment decision to the employee. . . . This is true even if the employee does not experience its effects until a later date." *McClendon v. Hewlett-Packard Co.*, No. CV-05-087-5-BLW, 2005 WL 1421395, at *3 (D. Idaho June 9, 2005); *see also Del. State Coll. v. Ricks*, 449 U.S. 250, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980) (Title VII action) (holding that the alleged discrimination occurred, and the filing limitations period commenced, at the time the employer's decision was made and communicated to the plaintiff even though one of the effects of the decision did not occur until later).

In this case, Steiman filed her administrative complaint on July 1, 2008, which means that any adverse employment actions communicated to her prior to April 2, 2008 are outside of the limitations period. Steiman alleges, "Defendants retaliated and discriminated against [her] by taking negative employment actions including, inter alia, marginalizing her, removing her from

19

accounts, not allowing her to work on accounts, even when Defendants' executives specifically requested her, disparaging her, giving her an inaccurate poor performance review, and ultimately terminating her employment." Compl. ¶ 67. Other than the termination of her employment, all of these alleged actions are alleged to have occurred prior to April 2, 2008. Compl. ¶¶ 45-58. Therefore, to the extent Ms. Steiman's claim is not dismissed in its entirety, all claims based on anything other than the termination of her employment should be dismissed due to the SOX Whistleblower Provision's limitations section.

## V.   CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion dismissing the complaint in its entirety, with prejudice.

DATED:      February 27, 2009
            New York, New York

Respectfully submitted by,

DAVIS & GILBERT LLP

Howard J. Rubin:
hrubin@dglaw.com
Gregg L. Brochin:
gbrochin@dglaw.com
1740 Broadway
New York, NY 10019
(212) 468-4800
*Counsel for Defendants WPP Group PLC and Ogilvy & Mather Worldwide, Inc.*